**BEFORE THE UNITED STATES JUDICIAL PANEL ON MULTIDSITRICT LITIGATION**

**In re:** Endangered Species Committee, Order Regarding Gulf of America Oil and Gas Activities, 91 Fed. Reg. 16966, Issued on April 3, 2026

MCP No. 202

**PETITIONER NATURAL RESOURCES DEFENSE COUNCIL'S MOTION TO STRIKE THE NOTICE OF MULTICIRCUIT PETITIONS FOR REVIEW, RECONSIDER THE CONSOLIDATION ORDER, AND ORDER TRANSFER BACK TO THE D.C. CIRCUIT COURT OF APPEALS**

Petitioner Natural Resources Defense Council, Inc. (NRDC) moves for reconsideration of the Panel's April 17, 2026, order consolidating judicial review in the United States Court of Appeals for the Fifth Circuit (Consolidation Order). *See* JPML Rule 25.7(a). On reconsideration, the Panel should strike the Endangered Species Committee's April 16, 2026, notice of multicircuit petitions for review (Multicircuit Notice), and vacate the Consolidation Order.[1] *See In re Fed. Energy Regul. Comm'n*, 730 F. Supp. 3d 1366, 1370 (J.P.M.L. 2024) (*Gas Transmission Nw.*) (granting the same requested relief); *In re Fed. Energy Regul. Comm'n*, 341 F. Supp. 3d 1378, 1380 (J.P.M.L. 2018) (*Atl. Coast Pipeline*) (same).

The Committee's Multicircuit Notice lists two petitions for review of the "Committee[] Order granting an exemption from certain requirements of the Endangered Species Act [(ESA)] for Gulf of America Oil and Gas Activities." ECF No. 1 at 2; ECF No. 1-1. Only NRDC's Petition before the United States Court of Appeals for the D.C. Circuit, however, was filed within

---

[1] NRDC is prepared to proceed in accordance with the Panel's expedited briefing schedule, set forth in its April 23, 2026 Minute Order.

the ten-day statutory window under 28 U.S.C. § 2112(a)(1). The Committee therefore erred in issuing its Multicircuit Notice, so the Panel must vacate the resulting Consolidation Order and unwind its effects. *See id.* § 2112(a)(1), (3).

Because the D.C. Circuit transferred the movants' cases to the Fifth Circuit on April 20, 2026, pursuant to the Panel's Consolidation Order, NRDC further moves the Panel to issue an order: (a) directing Federal Respondents to file the record in the D.C. Circuit, consistent with section 2112(a)(1); and (b) instructing the Fifth Circuit to transfer its case back to the D.C. Circuit. *See* Clerk's Order Transferring Case, *NRDC v. Burgum*, No. 26-1079 (D.C. Cir. Apr. 20, 2026) (attached as Exhibit A); *see also* 28 U.S.C. § 2112(a)(1) (requiring litigation to proceed in the venue of the first-filed case if only one case was filed within ten days of the challenged order's issuance).

## BACKGROUND

I.    FACTUAL BACKGROUND

On March 31, 2026, Federal Respondents held a public meeting and voted to grant a sweeping exemption from the ESA's interagency consultation requirements for federally authorized oil and gas activity in the Gulf of America (Gulf of Mexico). Doug Burgum et al., Endangered Species Committee Decision at 3 (Mar. 31, 2026) (Committee Order), doi.gov/sites/default/files/documents/2026-03/endangered-species-committee-order.pdf (attached as Exhibit B). In its written order, issued on March 31, 2026, and published that same day on the Department of the Interior's (DOI's) website, the Committee declared its exemption was "effective immediately." *Id.* at 3.

That same day, March 31, 2026, the federal government filed notices in at least three pending district court cases, asserting that the Committee Order mooted those cases. In its notice

to the U.S. District Court for the District of Maryland, the federal government claimed that "the Committee[] Order granting an exemption" rendered moot litigation over a 2025 biological opinion on the federal oil and gas program in the Gulf because "the ESA's Section 7 requirements no longer apply" to the challenged ESA consultation. Fed. Defs.' Notice and Suggestion of Mootness at 2, *Sierra Club v. Nat'l Marine Fisheries Serv.*, No. 8:25-cv-01627-DLB (D. Md. Mar. 31, 2026), ECF No. 90. The federal government filed a similar Notice of Suggestion of Mootness in a case implicating a separate ESA consultation on federal oil and gas activities in the Gulf. Fed. Defs.' Notice and Suggestion of Mootness, *Ctr. For Biological Diversity v. Burgum*, No. 1:24-cv-990-DLF (D.D.C. Mar. 31, 2026), ECF No. 44 ("Given the Committee[] Order, Plaintiff's challenge is now moot."). Again on the same day, the federal government notified the U.S. District Court for the District of Columbia of its theory that the Committee's order mooted a third case challenging oil and gas lease sales in the Gulf. Fed. Defs.' Notice and Suggestion of Mootness, *Healthy Gulf v. Burgum*, No. 1:25-cv-04016-APM (D.D.C. Mar. 31, 2026), ECF No. 50 ("Given the Committee[] Order, Plaintiff's challenge is now moot."). The Committee Order, dated March 31, 2026, was filed as an exhibit to all three notices. These filings are attached hereto as Exhibit C.

Three days later, on April 3, 2026, a notice of the Committee Order, including the text of the Order itself, was published in the Federal Register (Federal Register Notice). 91 Fed. Reg. 16,966. The notice is dated March 31, 2026, and states that "[t]his decision and order are effective immediately." *Id.* at 16,967.

## II.   PROCEDURAL BACKGROUND

On April 3, 2026, NRDC filed its Petition for Review of the Committee Order in the D.C. Circuit Court of Appeals. *NRDC v. Burgum*, No. 26-1079 (D.C. Cir.); *see also* Multicircuit

3

Notice, *In re Endangered Species Committee,* MCP No. 202, ECF No. 1-1 at 1. Service of date-stamped copies of NRDC's Petition to Federal Respondents was completed on April 9 and 10, 2026. *See* Exhibit F, Service Documents. Federal Respondents state in their notice that the Committee received NRDC's Petition on April 10, 2026. *In re Endangered Species Committee*, MCP No. 202, ECF No. 1-1 at 1. Either way, NRDC's service of the date-stamped Petition to all six Federal Respondents was completed within ten days of issuance of the Committee Order.

On April 13, 2026—thirteen days after the Committee's vote and issuance of its order—American Energy Association (AEA) filed its petition for review in the Fifth Circuit. *Am. Energy Ass'n v. Burgum*, No. 26-60240 (5th Cir.). According to Federal Respondents, they received the AEA petition that same day. Multicircuit Notice, *In re Endangered Species Committee*, MCP No. 202, ECF No. 1-1 at 1.

On April 14 and 15, Defenders of Wildlife (Defenders), and National Wildlife Federation, National Parks Conservation Association, Florida Wildlife Federation, Louisiana Wildlife Federation, and Texas Conservation Alliance (NWF), respectively, petitioned for review of the Committee Order in the D.C. Circuit. *Defs. of Wildlife v. Endangered Species Comm.*, No. 26-1085 (D.C. Cir. Apr. 14, 2026); *Nat'l Wildlife Fed'n v. Burgum*, No. 26-1088 (D.C. Cir. Apr. 15, 2026). On April 16 and 20, 2026, the D.C. Circuit consolidated NRDC's, Defenders', and NWF's (collectively, Environmental Petitioners') petitions. Orders, *NRDC v. Burgum*, No. 26-1079 (D.C. Cir. Apr. 16 and 20, 2026).

Federal Respondents filed their Multicircuit Notice on April 16, 2026. The Notice stated that petitions challenging the Committee Order had been filed in multiple courts of appeal. *In re Endangered Species Committee*, MCP No. 202, ECF No. 1 at 2. The following day, the Panel accepted the Multicircuit Notice for filing and issued its Consolidation Order, randomly selecting

the Fifth Circuit as the court in which the record should be filed. Consolidation Order, ECF No.

3. On April 20, 2026, the Deputy Clerk for the D.C. Circuit issued an Order transferring the

Environmental Petitioners' cases to the Fifth Circuit pursuant to the Panel's Consolidation Order.

*See* Exhibit A; *see also* April 22, 2026, Screenshot of Docket for *NRDC v. Burgum, et al.*, No.

26-1079 (D.C. Cir.) (attached as Exhibit D); April 22, 2026, Screenshot of Docket for *American*

*Energy v. Burgum*, No. 26-60240 (5th Cir.) (attached as Exhibit E).

### III.    LEGAL BACKGROUND

On March 31, 2026, Federal Respondents purportedly functioning as the Committee

issued a final determination, which they characterized as an exemption under Section 7(h) of the

ESA. *See* Exhibit B, Committee Order; *see generally* 16 U.S.C. § 1536(h). That subsection

specifies that "[a]ny final determination by the Committee" under subsection (h), "shall be

considered final agency action for purposes of chapter 7 of title 5." *Id.* § 1536(h). The regulations

further specify the requirements for the written form of this determination:

> The Committee's final determinations shall be documented in a written decision. If
> the Committee determines that an exemption should be granted, the Committee
> *shall issue an order* granting the exemption and specifying required mitigation and
> enhancement measures. The Committee shall publish its decision and order in the
> Federal Register as soon as practicable.

50 C.F.R. § 453.03(b) (emphasis added). Here, the Federal Respondents "issue[d] an order" on

March 31, and "publish[ed]" that order in the Federal Register days later, on April 3. *Id.*

A decision by the Committee under subsection (h) can be reviewed in the courts of

appeals.[2] "Any person . . . may obtain judicial review . . . of any decision of the Endangered

---

[2]Petitioner believes that judicial review of Federal Respondents' action is proper, not in
the courts of appeals pursuant to 16 U.S.C. § 1536(n), but rather in the district court pursuant to
the Administrative Procedure Act, 5 U.S.C. §§ 704, 706. Petitioner has filed a complaint in the
district court. *See NRDC v. Burgum*, No. 26-cv-1116-RC (D.D.C. filed Apr. 1, 2026). However,
in light of Respondents' contention that judicial review is available only in the courts of appeals

Species Committee under subsection (h). . . by filing . . . within 90 days after the date of issuance of the decision, a written petition for review. A copy of such petition shall be transmitted by the clerk of the court to the Committee and the Committee shall file in the court the record in the proceeding, as provided in section 2112 of title 28." *Id.* § 1536(n). "If within ten days after issuance of the order the . . . commission . . . receives, from the persons instituting the proceedings, the petition for review with respect to proceedings in at least two courts of appeals, the . . . commission . . . shall, promptly after the expiration of the ten-day period . . . , so notify the judicial panel on multidistrict litigation . . . ." 28 U.S.C. § 2112(a)(1), (a)(3). The Panel, in turn, employs random selection to designate one court of appeals for consolidation of the multiple petitions for review. *Id.* § 2112(a)(3).

But petitions for review "must meet strict statutory requirements" to trigger the Panel's random selection procedures under 28 U.S.C. § 2112(a). *Atl. Coast Pipeline*, 341 F. Supp. 3d at 1380; *In re Fed. Energy Regul. Comm'n*, 278 F. Supp. 2d 1379, 1380 (J.P.M.L. 2003) (*Yakama Nation*). Only certain petitions qualify: those date-stamped and "receive[d]" by the relevant agency "from the persons instituting the proceedings," "within ten days after issuance of the order." 28 U.S.C. § 2112(a)(1); *Yakama Nation*, 278 F. Supp. 2d at 1380 (petitions for review "must be filed in the court of appeals and received by the agency within ten days of the agency order").

Where only one petition for review is filed within ten days of the Committee's decision, the venue for that petition is the only proper venue. 28 U.S.C. § 2112(a)(1) ("If within ten days after the issuance of the order the agency, board, commission, or officer concerned receives,

---

pursuant to section 7(n), 16 U.S.C. § 1536(n), Petitioner has filed a protective petition for review in the D.C. Circuit Court of Appeals.

from the persons instituting the proceedings, the petition for review with respect to proceedings in only one court of appeals, the agency, board, commission, or officer shall file the record in that court notwithstanding the institution in any other court of appeals of proceedings for review of that order.").

## ARGUMENT

There is no dispute that NRDC's Petition meets the strict statutory requirements of 28U.S.C. § 2112(a)(1). NRDC filed its Petition and served date-stamped copies on all six Federal Respondents within ten days of the March 31, 2026, Committee Order. *See* Exhibit F, NRDC Service Documents. AEA's petition, on the other hand, was neither filed nor received within ten days of the issuance of the Committee Order on March 31, 2026. This fundamental flaw renders AEA's petition ineligible for inclusion in the Committee's Multicircuit Notice and thus warrants striking the Multicircuit Notice and vacating the Panel's Consolidation Order. The only petition for review that was "filed" and "received" within "ten days after issuance of the order" was NRDC's, which was filed in the D.C. Circuit. 28 U.S.C. § 2112(a)(1), (a)(3); *see also* Exhibit F, NRDC Service Documents.

**I.** **THE TEN-DAY STATUTORY PERIOD CLOSED ON APRIL 10, 2026, RENDERING BOTH THE FILING AND DELIVERY OF AEA'S PETITION UNTIMELY UNDER SECTION 2112(A)**

The Committee Order's date of issuance and effective date is March 31, 2026, so the ten-day window under section 2112(a) expired on April 10, 2026. *See* Exhibit B, Committee Order; *accord* Federal Register Notice, 91 Fed. Reg. at 16,967; *see also* Fed. R. App. P. 26(a)(1) (specifying that "in any local rule or court order, or in any statute that does not specify a method of computing time" the computation of time periods, stated in days, shall be based on calendar days, not business days). AEA's petition was filed in the Fifth Circuit and received by the

7

Committee on April 13, 2026—three days after the ten-day window closed. *See* Multicircuit Notice, ECF No. 1-1 at 1–2.

Federal Respondents suggest that the Committee Order was not issued on March 31, 2026—the date on which the Committee voted to grant the exemption, signed the order, and published it online—but, rather, on April 3, 2026—the date on which the Order was published in the Federal Register. *See id.* at 1 ("Date of issuance by Federal Register publication: April 3, 2026"); ECF No. 1 at 2 (referencing the "issuance of the agency action on April 3, 2026"). This suggestion is belied by section 2112(a)(1), ESA section 7 and its implementing regulations, and Federal Respondents' own treatment of the Order's effective date.

### A.    The Committee Order Was "Issued" on the Day the Committee Voted and Published Its Order on the Department of the Interior's Website

Section 2112(a)'s ten-day window opened when the Committee Order was issued, even though its publication in the Federal Register came later. *See* 28 U.S.C. § 2112(a). Here, the Committee publicly voted to grant an exemption on March 31, 2026; each member of the Committee signed the order on a publicly livestreamed video; and the Committee published its Order that same day on the Interior Department's official website. *See* Exhibit B, Committee Order. The March 31, 2026, Order unequivocally declared the exemption "effective immediately." *Id.* at 3.

In interpreting the meaning of the word "issuance," the Panel need look no further than the word's ordinary meaning at the time Congress enacted 28 U.S.C. § 2112(a). *See, e.g.*, *Perrin v. United States*, 444 U.S. 37, 42 (1979) ("A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning."). In 1990, Black's Law Dictionary defined the verb "issue" as follows: "To send forth; to emit; to promulgate; as, an officer issues orders, process issues from a court."

Issue, Black's Law Dictionary (6th ed. 1990) (Attached as Exhibit I). Here, the Committee issued an order on March 31; they "sen[t] forth" and "promulgate[d]" that order on a public video link and an official government website. *See id.*

In these circumstances, there is no basis for construing "the issuance of the order" to mean the publication of the order, days later, in the Federal Register. *See* 28 U.S.C. § 2112(a)(1). The Fifth Circuit's decision in *In re Electronic Security Association* is illustrative. *In re Electronic Security Ass'n*, No. 24-60570 (5th Cir. Nov. 19, 2024) (order granting mandamus petition) (attached as Exhibit H). There, the court found no authority to support the argument that publication in the Federal Register was necessary to notify the public of the challenged agency action. *See Id.* at 6. Specifically, the court rejected the argument that, for purposes of 28 U.S.C. § 2112(a), a rule was issued when published in the Federal Register, rather than when the agency published the rule on its website and in a press release. *Id.* at 4–6. The court reasoned that Section 2112(a)'s use of the term "issuance"—as opposed to, for instance, "publication"—was meaningful, noting "the assumption that the legislative purpose is expressed by the ordinary meaning of the words used.'" *Id.* at 5 (quoting *Russello v. United States*, 464 U.S. 16, 21 (1983)). Considering a dictionary definition and prior judicial interpretations, the court ultimately found that "issuance" occurred before publication in the Federal Register where the agency publicized the rule on its website, in a press release, and on social media. *Id.* at 5–6 (citing "Issuance," Oxford Dictionaries; *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 676 (1950); *Fla. Manufactured Hous. Ass'n, Inc. v. Cisneros*, 53 F.3d 1565, 1574 (11th Cir. 1995); *Paine v. Merit Sys. Prot. Bd.*, 467 F.3d 1344, 1347 (Fed. Cir. 2006)).

Other courts have similarly declined to interpret "issuance" as requiring anything more than making the order publicly available. For instance, the Fourth Circuit adopted dictionary

9

definitions defining issuance, as, among other things, "the act of . . . proclaiming or promulgating." *Mining Energy, Inc. v. Dir., Off. Of Workers' Comp. Programs*, 391 F.3d 571, 575 (4th Cir. 2004) (citing Webster's Third New Int'l Dictionary 1201 (1976)). The Fourth Circuit construed the filing of an order, not its service, as the date of the order's "issuance" within the meaning of an administrative review statute. *Id*. The court further found that the regulations' requirement that an order be served on the recipient did not alter the meaning of "issuance" within the statute. *Id.* at 576; *accord Stevedoring Servs. of Am. v. Director, Off. of Workers' Comp. Programs*, 29 F.3d 513, 516 (9th Cir. 1994) (interpreting "issuance" to determine the timeliness of a petition for review, and holding that the challenged order was issued when it became available, not when it was served on the petitioner).

Significantly, this Panel has held that an order issues, within the meaning of 28 U.S.C. § 2112(a), upon becoming legally operative, even if the agency publishes its notice several days later. In *Gas Transmission Nw.*, two petitions—one filed in the Fifth Circuit and another filed in the D.C. Circuit—challenged a Federal Energy Regulatory Commission (FERC) order issued under the Natural Gas Act on October 23, 2023. 730 F. Supp. 3d at 1367-68. Under the Act, a party must first apply to FERC for a rehearing before appealing to the federal courts; if the agency does not act within thirty days, the application is deemed denied, triggering the applicant's ability to seek judicial review. *See id.* at 1367. The petitioners filed rehearing applications on November 22, 2023, and FERC failed to act thereupon by December 22, 2023. *Id.* Four days later, on December 26, 2023, FERC issued a Notice memorializing its denial. *Id.* The Panel held that the operative event triggering the ten-day filing period was FERC's effective denial on December 22, not the subsequent publication of the Notice of Denial. *Id.* at 1369. As the Panel explained, "[i]t was the passing of the thirty days with no agency action that triggered

10

the ability to appeal under the statute, not the issuance of the Notice of Denial." *Id.*

So, too, here. The agency's announcement, signing, and posting of the Committee Order on its website on March 31 is the operative event triggering the ten-day clock, not the Order's publication in the Federal Register on April 3. Section 7(n) of the ESA makes judicial review available for a Committee's decision under ESA section 7(h), 16 U.S.C. § 1536(n), which includes a "final determination whether or not to grant an exemption," *id.* § 1536(h)(1). By its own terms, the March 31, 2026 Committee Order contained a "decision, which is made under [section 7(h)]," to grant an ESA exemption that went into effect "immediately" upon its release. Exhibit B, Committee Order, at 2; *see also id.* at 3 ("This decision and order are effective immediately. March 31, 2026[.]"); Federal Register Notice, 91 Fed. Reg. at 16967. Judicial review thus became available—and the section 2112(a) period commenced—when the Committee "issu[ed] its final decision and its concomitant Committee Order: March 31, 2026. 16 U.S.C. § 1536(n).

### B.      ESA Regulations Have Long Treated a Committee Order's Issuance and Its Publication in the Federal Register as Distinct Events

The implementing regulations for the Committee confirm that the issuance of a Committee order precedes the publication of that order in the Federal Register. *See* 50 C.F.R. § 453.03(b) (titled "Committee review and final determinations"). Much like the underlying statutory provision in *Gas Transmission Nw.*, 730 F. Supp. 3d at 1367, the relevant regulatory provision describes issuance and publication (or in *Gas Transmission Nw.*, "notice") as separate events. The regulation specifies that "[i]f the Committee determines that an exemption should be granted, the Committee shall *issue* an order granting the exemption and specifying required mitigation and enhancement measures." 50 C.F.R. § 453.03(b) (emphasis added). The regulation continues: "The Committee shall *publish* its decision and order in the Federal Register as soon as

11

practicable." *Id*. (emphasis added). As in *Gas Transmission Nw.*, the first event—issuance—is the legally operative event that begins the ten-day clock under 28 U.S.C. § 2112(a)(1). *See* 730 F. Supp. 3d at 1369 ("Section 2112(a)'s ten-day countdown began when, by operation of law, the thirty-day period expired, not when FERC subsequently notified the parties of this event."). Much like the second-filed petition in *Gas Transmission Nw.*, AEA's petition is untimely because the ten-day countdown began when the Committee Order was issued and took effect, not days later when it was published in the Federal Register. *See* 730 F. Supp. 3d at 1369–70. Federal Respondents therefore erred in filing the Multicircuit Notice.

### C.    The Government Has Represented to Other Courts That the Committee Order Was Effective on March 31, 2026

The Committee's view that its Order was not issued until April 3, 2026, is incongruent with the government's positions in at least three pending lawsuits challenging federal agencies' ESA violations in the Gulf. When the Committee Order was issued on March 31, 2026, the government immediately alerted the district courts presiding over those suits that "the ESA's Section 7 requirements no longer appl[ied]" to those challenged agency actions due to "the Committee[] Order granting an exemption." *See* Exhibit C (notices and suggestions of mootness).  Indeed, it was the government's position—as of March 31, 2026—that "[g]iven the Committee[] Order granting an exemption, Plaintiff's challenge is now moot." Exhibit C at 2.

The government's own assertions that the Committee Order was effective and binding on March 31 confirm that the Committee Order was issued on that day. The ten-day section 2112(a) period therefore concluded on April 10, 2026. *See* Fed. R. App. P. 26(a)(1). Because AEA's petition was not filed until April 13, 2026, its inclusion in the Multicircuit Notice was improper.

II.    **EVEN IF THE TEN-DAY WINDOW CLOSED ON APRIL 13, 2026, AEA STILL DELIVERED ITS PETITION TO THE COMMITTEE TOO LATE.**

Even if the "issuance" of the Committee Order were April 3, 2026—such that the ten-day clock did not run until April 13, 2026—AEA's petition would still have been untimely under 28 U.S.C. § 2112(a). That is because, having filed its petition for review in the Fifth Circuit on the last possible day (April 13, 2026), AEA failed to ensure that Federal Respondents received its date-stamped petition, as section 2112(a) requires, before the day lapsed and its assumed clock expired.

The Fifth Circuit docketed AEA's petition at approximately 11:54 a.m. on April 13, 2026. *See* Exhibit E. AEA represents that it served copies of its petition on Federal Respondents "via U.S. first class mail certified mail" on the same day: April 13, 2026. AEA Pet. 4 (certificate of service). It may well be that AEA *mailed* date-stamped copies of its petition to Federal Respondents on April 13. But the U.S. Postal Service does not offer same-day delivery by first-class certified mail. *See* Declaration of Sitara Witanachchi (Exhibit G), Exhibit G-5, Screenshot of U.S. Postal Service Website. It may also be that the Clerk of the Fifth Circuit transmitted copies of the petition to Federal Respondents on the same day. But neither scenario establishes that Federal Respondents *received* the date-stamped copies of the petition *from AEA* by April 13, which is what the statute requires. For a petition to fall within the ten-day window for random selection, Federal Respondents must "receive[]" a date-stamped copy of the petition "from the persons instituting the proceedings" within that window. 28 U.S.C. § 2112(a)(1). Courts have strictly enforced this requirement, and the agency's receipt of the petition *from the Court Clerk*, as opposed to the Petitioner, is insufficient to bring the petition under the safe harbor of section 2112(a)(1). *Remington Lodging & Hosp., LLC v. N.L.R.B.*, 747 F.3d 903, 905 (D.C. Cir. 2014); *Omaha World–Herald v. NLRB*, No. 12–1005 (D.C. Cir. May 14, 2012) (attached as

13

Exhibit J); *Local Union 36 v. NLRB,* No. 10–3448 (2d Cir. Dec. 28, 2010) (attached as Exhibit K).

Federal Respondents may instead rely on the fact that AEA's counsel emailed a copy of the Petition to the Department of Justice (DOJ) on April 13, 2026. *See* Exhibit G ¶¶ 6-8. But AEA's counsel's email to Principal Deputy Assistant Attorney General (PDAAG) for the DOJ's Environment and Natural Resource Division Adam Gustafson fails to satisfy 28 U.S.C. § 2112(a)(1)'s stringent requirements. *See* Exhibits G-3 and 4.

Section 2112(a)(1) requires the "agency, board, commission, or officer concerned" to "receive[]" the petition for review "from the person instituting the proceeding." 28 U.S.C. § 2112(a)(1). Neither PDAAG Gustafson nor DOJ are Federal Respondents in this case or otherwise the "agency, board, commission, or officer concerned." *See id*. And there is no indication that Federal Respondents—the Endangered Species Committee, rather than its counsel—received the Petition from PDAAG Gustafson or DOJ on April 13. *See* Exhibit G-3 and 4. Moreover, even if Federal Respondents did receive from DOJ a copy of the emailed Petition on April 13, they did not receive the Petition "from the persons instituting the proceedings"—that is, AEA. 28 U.S.C. § 2112(a)(1). As the D.C. Circuit has stressed, the requirement for a petitioner to deliver the date-stamped petition to the agency respondent "makes a good deal of sense." *Remington Lodging & Hosp.*, 747 F.3d at 905. It "both alerts the agency that the petitioner cares about its chosen forum and . . . imposes the burden of compliance on the party seeking to benefit from section 2112(a)." *Id.* Besides, "Congress can make litigants 'turn square corners.'" *Id.* (quoting *Rock Island, Ark. & La. R.R. Co. v. United States*, 254 U.S. 141, 143 (1920)).

14

Finally, allowing Federal Respondents to accept electronic receipt of AEA's petition as sufficient for section 2112(a)(1) would be fundamentally unfair: Undersigned counsel for NRDC made multiple attempts to hand-serve, FedEx, and send by certified priority mail NRDC's Petition. Undersigned counsel further asked DOJ to confirm receipt of service or accept electronic service of NRDC's Petition for Review. But DOJ counsel advised it "cannot accept electronic service on behalf of Respondents." *See* Exhibit G-1. Ultimately, NRDC timely delivered its petition to Federal Respondents; even so, there is no principled basis for DOJ to accept electronic service on behalf of the Federal Respondents from AEA but not from NRDC.

Federal Respondents similarly have no grounds to claim that the Committee's "designated legal representative" "receive[d]" the AEA petition. *See id*, Exhibit G-3 and 4. Section 2112 states who can receive section 2112(a)(1) petitions: "Each agency, board, commission, or officer, as the case may be, shall designate *by rule* the office and the officer who must receive petitions for review under paragraph (1)." 28 U.S.C. § 2112(a)(2) (emphasis added). But neither the Committee nor its constituent members have promulgated any rule designating any officer "who must receive petitions for review." *Id*; *see* 50 C.F.R. § 453.03 (lacking any regulation designating parties to receive section 2112(a)(1) petitions). And section 2112(a)(2) does not allow the Committee to secretly designate DOJ officials, on an *ad hoc* basis, to accept petitions from some persons but not others. AEA's April 13, 2026, email to PDAAG Gustafson does not satisfy section 2112(a)(1), and it will be unable to demonstrate statutory compliance by other means.

In short, even assuming *arguendo* that the ten-day window opened with the April 3 Federal Register publication and closed on April 13, when AEA filed its petition, AEA was still

15

too late to comply with the statutory requirement that *AEA*, not the Court clerk or DOJ, deliver a date-stamped petition to the Federal Respondents within ten days.

**III.    THE PANEL SHOULD ORDER FEDERAL RESPONDENTS TO FILE THE RECORD IN THE D.C. CIRCUIT AND INSTRUCT THE FIFTH CIRCUIT TO TRANSFER THE CONSOLIDATED CASE**

The Panel should order Federal Respondents to file the record in the D.C. Circuit, consistent with section 2112(a)(1), and further order the Fifth Circuit to transfer all the consolidated petitions challenging the Committee Order to the D.C. Circuit. The D.C. Circuit transferred the Environmental Petitioners' case to the Fifth Circuit upon receipt of the Panel's Consolidation Order. The Fifth Circuit then docketed these three petitions under the same case number as the AEA petition. *See American Energy v. Burgum*, Case No. 26-60240, Additional Petitions for Review Filed (Fifth Cir. Apr. 21, 2026). Because transferring the case to the Fifth Circuit was in error, the Panel should remedy the error by requiring transfer to the proper venue: the D.C. Circuit.

There are two primary reasons to issue such an order. First, section 2112(a)(1) requires Federal Respondents to file the record in the D.C. Circuit because only NRDC's Petition was filed within the statutory ten-day window. 28 U.S.C. § 2112(a)(1) (requiring respondent to file the record for the challenged order in the court of appeals where a petition for review of the action was filed if a petition for review is filed "in only one court of appeals" "within ten days after the issuance of the order").

Second, if the Panel vacates its Consolidation Order, further ordering Federal Respondents to file the record with the D.C. Circuit and directing the Fifth Circuit to transfer the consolidated cases back to the D.C. Circuit is necessary to unwind the erroneous Consolidation Order's effects. The Supreme Court has long recognized that "the power is inherent in every court, while the subject of controversy is in its custody, and the parties are before it, to undo what

16

it had no authority to do originally, and in which it, therefore, acted erroneously, and to restore, so far as possible, the parties to their former position." *Nw. Fuel Co. v. Brock*, 139 U.S. 216, 219 (1891).

Merely vacating the Consolidation Order would leave Environmental Petitioners with an incomplete remedy, necessitating further, unnecessary judicial proceedings to correct the Consolidation Order. And even if a deficient Notice of Multicircuit Petitions could initially effectuate transfer, both the Panel's reconsideration process and the strict procedural requirements of 28 U.S.C. § 2112(a) would be undermined if the Panel could not correct any errors flowing from a faulty Notice and the ensuing Consolidation Order.

## CONCLUSION

For the foregoing reasons, the Committee's Multicircuit Notice should be struck, the Panel's Consolidation Order should be vacated, Federal Respondents should be ordered to file the record in the D.C. Circuit Court of Appeals, and the Fifth Circuit should be instructed to transfer Environmental Petitioners' petition for review from the Court of Appeals for the Fifth Circuit to the D.C. Circuit.

Date: April 24, 2026

Respectfully submitted,

/s/ Sitara Witanachchi
Sitara Witanachchi (D.C. Bar No. 1023007)
Erik Van de Stouwe (NY Bar No. 5692512)
Jared Solomon (D.C. Bar No. 90033165)
Natural Resources Defense Council, Inc.
1152 15th St. NW, Suite 300
Washington, D.C. 20005
switanachchi@nrdc.org
evandestouwe@nrdc.org
jsolomon@nrdc.org
Tel: (202) 289-6868

Kate Desormeau (CA Bar No. 266463)
Natural Resources Defense Council, Inc.

17

111 Sutter St., 21st Floor
San Francisco, CA 94104
kdesormeau@nrdc.org
Tel: (415) 875-6100

*Attorneys for Petitioner Natural Resources*
*Defense Council, Inc.*

## CERTIFICATE OF SERVICE

In accordance with JPML 4.1, the undersigned certify that, on April 24, 2026, this Motion for Reconsideration, Disclosure Statements, and attachments were served via CM/ECF on all parties who are registered users.

The undersigned further certify that they served a copy of the foregoing in accordance with JPML Rule 3.2(d) via USPS Priority Overnight Mail on:

Clerk of the Panel
United States Judicial Panel on Multidistrict Litigation
Thurgood Marshall Federal Judiciary Building
One Columbus Circle, NE, Room G-255, North Lobby
Washington, DC 20544-0005

The undersigned further certify that they served a copy of the foregoing on counsel for all parties in the Fifth and D.C. Circuit proceedings as follows:

Robert N. Stander
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530
(202) 727-7067
robert.stander@usdoj.gov

Christopher Anderson
Environment and Natural Resources Div.
U.S. Department of Justice
Post Office Box 7415
Washington, DC 20044
(202) 598-1971
christopher.anderson3@usdoj.gov

James R. Conde
Boyden Gray PLLC
800 Connecticut Avenue, 900
Washington, DC 20006
(202) 955-0620
jconde@boydengray.com

19

Jane P. Davenport
Joseph M. Manning
Victoria Molyneaux*
Defenders of Wildlife
1130 17th St. NW
Washington, DC 20036
(202) 682-9400
jdavenport@defenders.org
jmanning@defenders.org
*of counsel

Catherine Wannamaker
Southern Environmental Law Center
525 East Bay Street, Suite 200
Charleston, South Carolina 29403
(843) 720-5270
cwannamaker@selc.org

Zachary J. Hennessee
Southern Environmental Law Center
Ten Tenth Street, Suite 1050
Atlanta, Georgia 30309
(678) 400-4817
zhennessee@selc.org


The undersigned further certify that they served a copy of the foregoing proceedings on

counsel for the Eleventh Circuit Petitioner via USPS First Class mail and email:

Prim Formby Escalona
Maynard Nexsen PC
1901 6th Ave N, Suite 1700
Birmingham, AL 35203
pescalona@maynardnexsen.com