**BEFORE THE UNITED STATES JUDICIAL PANEL ON MULTIDSITRICT LITIGATION**

|  |  |
|---|---|
| **In re:** Endangered Species Committee, Order Regarding Gulf of America Oil and Gas Activities, 91 Fed. Reg. 16966, Issued on April 3, 2026 | MCP No. 202 |

**PETITIONER NATURAL RESOURCES DEFENSE COUNCIL'S COMBINED REPLY[1] IN SUPPORT OF MOTION TO STRIKE THE NOTICE OF MULTICIRCUIT PETITIONS FOR REVIEW, RECONSIDER THE CONSOLIDATION ORDER, AND ORDER TRANSFER BACK TO THE D.C. CIRCUIT COURT OF APPEALS**

American Energy Association (AEA) is undecided on whether the Committee Order was issued on April 2, 2026, when filed for public inspection; or April 3, 2026, when published in the Federal Register. AEA Resp. 6, ECF No. 24. Federal Respondents claim the Committee Order was issued on the date of the Federal Register publication, April 3. Fed. Resp'ts' Resp. 6, ECF No. 25. Neither is correct. What counts as "issuance" for purposes of 28 U.S.C. § 2112 varies by context, as Federal Respondents' and AEA's cited cases acknowledge. Its meaning depends on the language of the relevant statute and regulations that govern the challenged agency action. The Endangered Species Act (ESA) regulations clarify that a Committee order's "issuance" is distinct from, and antecedent to, its "publication." 50 C.F.R. § 453.03(b) ("If the Committee determines that an exemption should be granted, the Committee shall *issue* an order granting the exemption . . . . The Committee shall *publish* its decision and order in the Federal Register as soon as practicable." (emphases added)). Here, the Committee Order was issued on March 31, 2026—the date Federal Respondents (1) publicly voted to grant the ESA exemption and signed the

---

[1] Pursuant to JPML Rule 6.1(d), NRDC submits this combined reply to both AEA's and Federal Respondents' Responses to NRDC's Motion for Reconsideration.

Committee Order, Transcript of Endangered Species Committee Meeting (attached as Ex. A); (2) published the Committee Order on the Department of the Interior (DOI) website associated with the Committee Chair, Secretary Doug Burgum, NRDC Mot. Ex. B, ECF No. 15-3; and (3) represented in the Committee Order itself, and in contemporaneous filings in three pending lawsuits, that the Committee Order took effect immediately on March 31, 2026, s*ee id.* Ex. B, at 4 (Committee Order as posted online) ("This decision and order are effective immediately. [Dated] March 31, 2026."); *accord* Endangered Species Committee Notice ("Federal Register Notice"), 91 Fed. Reg. 16,966, 16,967 (Apr. 3, 2026) ("This decision and order are effective immediately. Dated: March 31, 2026."); NRDC Mot. 2-3 (discussing March 31 court filings).

AEA's April 13, 2026 petition was therefore filed outside the statutory ten-day window, and Federal Respondents erred in including it within their Multicircuit Notice. The only petition "filed" and "received" within "ten days after issuance of the order" was NRDC's, filed in the D.C. Circuit. 28 U.S.C. § 2112(a)(1), (a)(3); *see also* NRDC Mot. Ex. F, ECF No. 15-7.

To remedy Federal Respondents' error, the Multicircuit Notice should be stricken and the Panel's ensuing Consolidation Order vacated. Moreover, upon this Panel's vacatur of its Consolidation Order, the Panel can and should issue an order specifying the next steps required under sections 2112(a)(1) and (a)(5)—that Federal Respondents "shall file" the record with the D.C. Circuit, and that the Fifth Circuit "shall transfer th[e] proceedings," or consolidated case number 26-60240, to the D.C. Circuit, where the cases would be pending but for the improper Multicircuit Notice. 28 U.S.C. § 2112(a)(1), (a)(5).

## ARGUMENT

I.  **The Committee Order was Issued on March 31, 2026, so AEA's Petition was Filed and Received Outside the Ten-Day Window**

> **Formatted:** Font: Times New Roman, Bold

"Issuance" for purposes of section 2112 is context-specific and depends in part on the agency and statute involved, whether the agency has defined "issuance" in its governing regulations, and whether and how it publicized the challenged decision. To be sure, "issuance" requires public dissemination in some fashion. *See* NRDC Mot. 8-10 (citing dictionary definition); *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 676 (1950) (while agency had some latitude to define, by regulation, what constitutes "issuance" under the Natural Gas Act, "[k]nowledge of the substance [of the agency's order] must to some extent be made manifest"). But there is no "default rule" that "issuance" requires publication exclusively by Federal Register.[2] *Contra* AEA Resp. 1; *see also In re Electronic Security Ass'n*, No. 24-60570 (5th Cir. Nov. 19, 2024) (attached to NRDC Mot., Ex. H) ("[The agency] cites no authority establishing that the only way to put the public on notice of the Rule is through publication in the Federal Register. Nor have we found any.").

AEA and Federal Respondents are therefore wrong to suggest that granting reconsideration here, in the Endangered Species Committee context, would somehow breed chaos and confusion for other types of challenges. And their interpretation of "issuance" cannot be squared with the applicable regulatory language, or with the Committee's actions in publicizing its March 31 order and its immediate effect.

### A. AEA and Federal Respondents' Arguments Rely on Inapposite or Misconstrued Caselaw

The cases on which AEA and Federal Respondents rely do not establish that an order of the Committee is "issued" only when published in the Federal Register. They are, instead, a grab-

---

[2] Indeed, the Federal Register Act itself "repeatedly distinguishes between the *publication* of a document and its *issuance*, prescription, or promulgation." *Humane Soc'y of the U.S. v. U.S. Dep't of Agric.*, 41 F.4th 564, 569 (D.C. Cir. 2022) (citing 44 U.S.C. §§ 1501, 1503, 1507) (emphases added).

3

**Commented [GZ1]:** Flagging that the spacing of the header and the first sentence is inconsistent among the brief. (e.g. "C.. March 31, 2026, is the Clearest Issuance Date" spacing and below)

**Commented [WS2R1]:** @Lee, Austin, tomorrow morning, once the final edits are in, any chance you could pl do a run through on formatting issues (like the one Grace flags here) before we file?

bag of cases from unrelated statutory contexts (sometimes having nothing to do with 28 U.S.C. § 2112) that, taken together, show only that the meaning of "issuance" turns on the specific statutory and regulatory context. *See Skelly*, 339 U.S. at 678 ("The same words, in different settings, may not mean the same thing.").

The case AEA characterizes as most instructive—*Horsehead Resource Development Co. v. EPA*, 130 F.3d 1090 (D.C. Cir. 1997), involving a premature challenge to an Environmental Protection Agency (EPA) de-listing rule—is decidedly not. There, the EPA signed a de-listing rule on May 30 and thereafter distributed it to certain interested parties, including the petitioner, but not to the broader public. *Horsehead*, 130 F.3d at 1091. EPA published the rule in the Federal Register on June 12, and the rule became effective the following day. *Id.* The petitioner filed its petition for review before the June 12 Federal Register publication, arguing that the earlier date on which the EPA administrator signed the rule (May 30) should trigger the rule's ripeness for review. *Id.* at 1092.

But, unlike in this case, the statute governing judicial review of EPA's final rule in *Horsehead* specified that a petition must be filed "within ninety days from the date of . . . *promulgation*" of the rule. *Id.* (quoting 42 U.S.C. § 6976(a)(1) (emphasis added)). The D.C. Circuit articulated a default rule defining "promulgation" specifically: "If the agency does not define the term by regulation and if the statute supports (or at least does not foreclose) the interpretation, 'promulgation' is accorded its 'ordinary meaning'—i.e., publication in the *Federal Register*." *Id.* at 1093 (interpreting *Nat'l Grain & Feed Ass'n v. OSHA*, 845 F.2d 345 (D.C. Cir. 1988)). What's more, the relevant EPA regulation, 40 C.F.R. § 260.20(e), specified that EPA's decision was rendered final, and thus ripe for review, only upon Federal Register publication. 845 F.2d at 1095. Importantly, *Horsehead* said nothing about the meaning of "issuance" or the

4

application of 28 U.S.C. § 2112(a). Here, in contrast, the statutory trigger for review of the Committee's order in both 28 U.S.C. § 2112(a)(1) and 16 U.S.C § 1536(n) is the order's "issuance," not its "promulgation."

Seizing upon one of the definitions of "issuance" cited by NRDC, AEA contends that "issuance" is synonymous with "promulgation," and "promulgation" is synonymous with "publication in the Federal Register," so "issuance" must also be synonymous with "publication in the Federal Register." AEA Resp. 13 (citing *Horsehead*, 130 F.3d at 1093). But the very case on which *Horsehead* relied to "establish a default rule" defining "promulgation," *Horsehead*, 130 F.3d at 1093, explicitly *rejected* an argument equating "issuance" with "promulgation":

> OSHA may well have the power to equate the date of promulgation with the date of issuance, but it has not done so. It is clear from a reading of 29 U.S.C. § 655(f) that Congress intended to treat the date of issuance differently from the date of promulgation. Based on the plain meaning of 29 U.S.C. § 655(f), the ordinary usage of the term promulgate, and the lack of any specific agency regulation defining the date of promulgation, we conclude that an OSHA standard is promulgated on the date that it is published in the Federal Register.

*Nat'l Grain & Feed Ass'n v. OSHA*, 845 F.2d 345, 346 (D.C. Cir. 1988). As detailed *infra*, the applicable federal regulation here does not even use the word "promulgate," *see* 50 C.F.R. § 453.03, let alone equate "issuance" with "promulgation" or publication. *Horsehead*, therefore, is inapposite.

Federal Respondents' cases fare no better. Federal Respondents assert that "[i]t is well-settled that the date of 'issuance' for purposes of § 2112 need not be the same date a decision was adopted or became effective," citing *Council Tree Communications, Inc. v. FCC*, 503 F.3d 284, 288 (3d Cir. 2007), and *Virginia Electric & Power Co. v. EPA*, 610 F.2d 187, 189 (4th Cir. 1979). Fed. Resp'ts' Resp. 5. Just the opposite is true. *Council Tree* did not interpret the meaning of "'issuance' for purposes of § 2112," *contra id.*; in fact, the case did not cite 28 U.S.C. § 2112 at

5

all. *Council Tree* held that, by virtue of a provision in the Hobbs Act linking judicial review to "entry of a final order," a petition for review of an FCC order was premature where it was filed before Federal Register publication. 503 F.3d at 287-88. The court reached that conclusion at *Chevron* "step two," holding that the FCC's regulatory definition of "entry" as meaning "Federal Register publication" was a reasonable interpretation of an ambiguous statutory term. *Id.* at 289. Regardless of whether this interpretation of the Hobbs Act survives the demise of *Chevron*, *see Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024), there is no reason to extend its rationale to the present ESA context, where the statute and regulations contain no such language. *Virginia Electric* is similarly beside the point; *Virginia Electric* involved an agency regulation that expressly tethered reviewability to a specific date following Federal Register publication—a key fact not present here, as detailed *infra*. *See* 610 F.2d at 187-88.

AEA and Federal Respondents further insist that the *effective* date is not necessarily the *issuance* date, so the fact that the Committee Order stated it was "effective immediately" when signed on March 31, 2026, NRDC Mot. Ex. B, at 4, and the fact that the government filed notices before three federal judges on March 31 claiming the Committee Order is effective immediately, *id.* Ex. C at 2, 9, 15, somehow "ha[ve] no bearing" here, Fed. Resp'ts' Resp. 5, 9; AEA Resp. 15-16. Not so. When assessing the proper timing under section 2112(a) to file a petition for review challenging a decision before release of the formal decision, courts consider whether: "(1) The decision has actually been made; (2) The decision has been made effective; (3) The decision has been communicated to the public or to a reasonable cross-section of the interested parties; and (4) The decision has been described in detail." *City of Gallup v. FERC*, 702 F.2d 1116, 1122 (D.C. Cir. 1983).

6

All factors are met here. The Office of the Secretary of the Interior published a notice in the Federal Register on March 16, announcing that the Committee would convene on March 31 and providing a livestream link. 91 Fed. Reg. 12,672 (Mar. 16, 2026). On March 31, the Committee publicly voted to grant the exemption, and Chairman Burgum announced:

> As a result of this determination, the Committee granting the exemption pursuant to Section 7(h) [*sic*], accordingly, the Committee in doing this will be *issuing* an exemption from the requirements of ESA for all oil and gas exploration, development, and production activities associated with the BOEM and BSEE Outer Continental Shelf Oil and Gas Program as set forth in an order. The Committee *will publish the written determination today* regarding the exemption with all the supporting information.

Ex. A, at 16:11-21 (emphases added). Later that day, on March 31, the written Committee Order and supporting documentation were posted on the Department of the Interior's website. NRDC Mot. Ex. B. The Committee Order, as posted online, stated: "This decision and order are effective immediately. [Dated] March 31, 2026." *Id.*; *accord* 91 Fed. Reg. at 16,967 (same). The government further reiterated the finality of the Committee Order later that same day, March 31, by racing to three federal judges presiding over ESA litigation to announce the Order was "effective immediately" and mooted those pending cases. NRDC Mot. Ex. C.

Thus, the Committee Order issued, and the time for filing petitions for review began, on March 31, when the decision was both complete and "passe[d] out of the control of the authority"—that is, the Committee—"by being released to the interested parties or to the public in decisional form without any immediate intention of recall or consideration." *City of Gallup*, 702 F.2d at 1123.

Against this factual backdrop, AEA and Federal Respondents' attempt to distinguish this Panel's ruling in *Gas Transmission Northwest LLC*, 730 F. Supp. 3d 1366 (J.P.M.L. 2024), falls flat. Fed. Resp'ts' Resp. 9; AEA Resp. 12-13. They note that the FERC order at issue in *Gas*

*Transmission Northwest* had already been published by the time the petitions for review were filed. But in *Gas Transmission Northwest*, the prior publication of the FERC order was not singularly determinative of the issuance date. 730 F. Supp. 3d at 1368-69. Rather, the issuance date for purposes of section 2112 hinged on when the order became legally operative—at the conclusion of the thirty-day period for FERC to rule on the rehearing application. *Id.* at 1369. This Panel need look no further than its own precedent to find the same here. March 31, 2026— the day the Committee Order was publicly finalized and announced at a publicly noticed meeting, made available online, *and* instant legal consequences flowed therefrom—was the Committee Order's issuance date.

### B. The Governing Regulation Sets Forth a Two-Step Process Distinguishing Issuance from Federal Register Publication

The Endangered Species Committee regulation—which differentiates "issuance" from Federal Register "publication"—is fatal to Federal Respondents' and AEA's argument. The regulation first states that final determinations by the Committee "shall be documented in a written decision." 50 C.F.R. § 453.03(b). "If the Committee determines that an exemption should be granted, the Committee shall issue an order granting the exemption and specifying required mitigation and enhancement measures." *Id.* The Committee shall then "publish its decision and order in the Federal Register as soon as practicable." *Id*.

The regulation's plain language thus creates a two-step process whereby (1) the Committee "issue[s]" an order and subsequently (2) "publish[es]" that order in the Federal Register—precisely what the Committee did here. *See id*.; *DirecTV Grp., Inc. v. United States*, 89 Fed. Cl. 302, 310 (2009) ("It is well-settled that when regulations use different words, they have different meanings."), *aff'd*, 670 F.3d 1370 (Fed. Cir. 2012). This structure is notably different from AEA's proffered comparator regulation in *Horsehead*, 130 F.3d at 1093-95, which lacks any

"issuance" language and describes only a one-step process where the agency "will make a final decision by publishing in the Federal Register a regulatory amendment or a denial of the petition," 40 C.F.R. § 260.20(e) (1997).

Federal Respondents' interpretation contorts the regulation's language and conflicts with their own actions. Federal Respondents contend that the regulation requires the Committee to issue two separate documents: a "written decision" documenting its final determination, and a distinct "order granting the exemption" and specifying required mitigation and enhancement measures. Fed. Resp'ts' Resp. 6; *see also* AEA Resp. 14. The order is then "issued," in their view, only upon its joint publication in the Federal Register with the written decision. Fed. Resp'ts' Resp. 6. That interpretation is divorced from both the regulatory language and reality. Tellingly, while Federal Respondents and AEA both assert that the regulations require the Committee to issue two separate documents (the "written decision" and the "order"), they do not cite to those separate documents, *see id.*, nor could they. No separate "written decision" document exists; rather, Federal Respondents published a single, written "Exemption Order" on March 31, which granted the exemption and purportedly specified mitigation measures, then published *the same thing* in the Federal Register on April 3. *Compare* NRDC Mot. Ex. B *with* Federal Register Notice, 91 Fed. Reg. 16,966. In sum, AEA and Federal Respondents cannot escape the plain meaning of the operative regulation: "issuance" of the Committee's Order and decision happened separately from, and before, the subsequent "publication" in the Federal Register.

**C. March 31, 2026, is the Clearest Issuance Date**

AEA and DOJ's protestations that treating March 31 as the "issuance" date will sow chaos and confusion are misplaced. There was no "uncertainty" about when the Committee

would issue its order, *but see* AEA Resp. 1; the Office of the Secretary of the Interior published a Federal Register notice two weeks before the Committee's meeting announcing the meeting time and providing a livestream link. 91 Fed. Reg. 12,672 (Mar. 16, 2026). And during that public March 31 meeting, Chairman Burgum announced the written order would be published online "today." 91 Fed. Reg. 12,672 (Mar. 16, 2026); Ex. A, at 16:18-20. The "general public" was unquestionably on notice, AEA Resp. 9, and the Panel need not worry "[h]ow . . . affected parties such as AEA members [are] to know which agency website(s), social media accounts, or district court dockets to monitor for notice of the Committee's act of official issuance of the decision and order," *id.* at 11.

The regulation makes clear that "issuance" is separate from and antecedent to "publication" in the Federal Register, and Federal Respondents' *post hoc* litigating position to the contrary deserves no weight. *See Fla. Manufactured Hous. Ass'n, Inc. v. Cisneros*, 53 F.3d 1565, 1574 (11th Cir. 1995).

## II.     AEA's Delivery of its Petition Was Also Untimely

AEA's failure to file its petition for review within 10 days of the issuance of the Committee Order, as explained above, is sufficient on its own to warrant reconsideration and vacatur of the Panel's consolidation order. There is, however, also a second, independent reason to grant reconsideration: even if AEA filed its petition in time, AEA and Federal Respondents have failed to establish that the Committee "receive[d]" it from AEA within 10 days. *See* 28 U.S.C. § 2112(a)(1). AEA and Federal Respondents' shifting and incomplete explanations to the contrary do not withstand even minimal scrutiny.

Initially, Federal Respondents told this Panel that AEA's petition for review was both "fil[ed]" and "received by the Committee" on April 13, 2026. Notice of Multicircuit Pets. for

10

Review, ECF No. 1, Ex. 1. The certificate of service on AEA's petition, signed by AEA's counsel, and attached to Federal Respondents' notice, averred that service was accomplished "via U.S. first-class mail [*sic*] certified mail." *Id.* at 23. When confronted with the fact that U.S. first-class certified mail could not possibly accomplish same-day delivery, however, *see* NRDC Mot. 13, Federal Respondents and AEA changed their story. They now advance new evidence that AEA hand-delivered its petition to Principal Deputy Assistant Attorney General (PDAAG) Adam Gustafson and four of the six Federal Respondents—which Federal Respondents conspicuously did not mention when filing the Notice of Multicircuit Petitions or responding to NRDC's inquiry about delivery of AEA's Petition. Declaration of Sitara Witanachchi (attached hereto), Ex. B-1 (email from DOJ counsel); *see also* AEA Resp., Ex. C (Correia Decl.).

These late-breaking revelations have not cured the legal deficiencies in AEA's service for at least three reasons. First, service on some, but not all, Committee members does not satisfy section 2112(a). Second, service on PDAAG Gustafson does not satisfy section 2112(a). Third, factual questions remain as to which members of the Committee received date-stamped petitions from AEA on April 13, 2026. Respondents have no statutory or regulatory basis to offer shortcuts to AEA so it can fulfill the procedural requirements of section 2112(a)(1).

### A. Neither Federal Respondents nor AEA Have Shown that Service on Some of the Committee Members, but Not All, Is Enough to Satisfy Section 2112(a)(1)

It is now undisputed that AEA failed to serve two Committee members—Secretary of the Army Daniel Driscoll and Acting Chairman of the Council of Economic Advisors Pete Yared—by April 13. Correia Decl. ¶¶ 8-13. Federal Respondents assert that receipt by Chairman Burgum alone constitutes receipt by the Committee. Fed. Resp'ts' Resp. 10 (citing 16 U.S.C. § 1536(e)(5)(B)). The statutory provision they cite, however, merely establishes that "[t]he Secretary of the Interior shall be the Chairman of the Committee." 16 U.S.C. § 1536(e)(5)(B).

11

Elsewhere, the ESA gives the Secretary of the Interior as Committee Chairman only the authority to convene the Committee and request information from other agencies. *Id.* § 1536(e)(5)(C), (e)(7)(C). And despite Congress's mandate that "[e]ach agency, board, commission, or officer, as the case may be, *shall* designate by rule the office and the officer who must receive petitions for review under paragraph (1)," 28 U.S.C. § 2112(a)(2) (emphasis added), the Committee has adopted no such rule. *See* NRDC Mot. 15. Federal Respondents' *post hoc* litigating position that service on the Chairman alone is sufficient is no substitute for a duly promulgated rule. *See Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 212–13 (1988).

Federal Respondents have produced no example of another case where receipt of a document by a single member of a multimember board suffices for service, and NRDC is aware of none. Indeed, such an approach would be inconsistent with the ESA, which authorizes a single member to "take any action the Committee is authorized to take under this paragraph" only when "so authorized by the Committee." 16 U.S.C. § 1536(e)(7)(B).[3] Both the single-member receipt and Chairman-receipt theories of section 2112(a)(1) are also contradicted by the Multicircuit Notice itself, which listed the "Date Received by the Committee" for the NRDC Petition as April

---

[3] Incredibly, Respondents argue that NRDC may not oppose their novel theory that service on a single Committee member is sufficient under section 2112(a)(1) because NRDC did not foresee and respond to that novel argument in its opening brief. Fed. Resp'ts' Resp. 10 n.4. NRDC did not focus in its motion on the proper number of members who must receive the petition because, at the time, the information Federal Respondents had provided indicated that *none* of the Committee members had received the AEA Petition. NRDC Mot., Ex. G-2. Neither of the authorities Federal Respondents cite support a theory of waiver encompassing failure to anticipate arguments based on information that movants withheld. *See Entergy Arkansas, LLC v. FERC*, 134 F.4th 576, 581 (D.C. Cir. 2025) (petitioner cannot raise its own standing arguments in a reply); *United States v. Prince*, 868 F.2d 1379, 1386 (5th Cir. 1989) (criminal defendant cannot raise a claim from the right of allocution for the first time in his reply brief). Respondents cannot profit from their withholding of documents by blocking NRDC from responding to the arguments they raised for the first time in their opposition brief.

10, the date on which the *last* Committee member[4] was served. ECF No. 1, Ex. 1. The first member of the Committee to receive NRDC's Petition was Administrator Zeldin, on April 7, *see* NRDC Mot. Ex. F at 38, while Committee Chairman Burgum was served on April 9, *id*. at 19.

### B. Principal Deputy Assistant Attorney General Adam Gustafson Has Not Been Designated to Receive Service on the Committee's Behalf

Federal Respondents and AEA additionally argue that delivery was effectuated under section 2112(a)(1) when AEA emailed and hand-served a copy of its petition on PDAAG Gustafson. Federal Respondents argue that delivery to counsel is "ordinarily" sufficient to constitute receipt by the represented party, Fed. Resp'ts' Resp. 11, citing *Irwin v. Department of Veterans Affairs*, which holds that where a statute "does not specify receipt by the claimant rather than by the claimant's designated representative," receipt by the claimant's attorney may suffice. 498 U.S. 89, 92 (1990). But unlike the statute at issue in *Irwin*, section 2112(a)(1) specifies that "the agency, board, commission, or officer concerned" must be the one who "receive[s]" the petition for review "from the persons instituting the proceedings." 28 U.S.C. § 2112(a)(1). Unless the Committee has "designat[ed] by rule" the Department of Justice (DOJ) as "the office . . . who must receive petitions for review" per 28 U.S.C. § 2112(a)(2)—which it has not—receipt of the petition by an attorney in DOJ is insufficient to satisfy the statute.

Federal Respondents rely on the Committee's selection of attorneys at DOJ "to appear for and represent the Committee in any litigation challenging the Decision and Order." Fed. Resp'ts' Resp. 11 (citing 91 Fed. Reg. at 16,967). That statement, made in the Committee Order itself, is not a designation "by rule" as required by 28 U.S.C. § 2112(a)(2). It is, instead, simply the

---

[4] The Notice stated that the Committee received NRDC's petition on April 10, 2026. At the time the Notice was filed, the Committee was not certain about the date of receipt. Fed. Resp'ts' Resp. at 2 n.1. The Committee has since confirmed receipt of NRDC's petition on April 9, 2026. *Id.*

13

agency's selection of counsel to represent it in this specific litigation, as authorized by 16 U.S.C. § 1536(n) ("Attorneys designated by the Endangered Species Committee may appear for, and represent the Committee in any action for review under this subsection."). Respondents' argument is also flatly contradicted by their assertion that "individual Department of Justice attorneys are not authorized to accept service of process," Fed. Resp'ts' Resp. 11, and by their own attorney's statement to NRDC's counsel that he could not accept service from NRDC on behalf of the Federal Respondents when NRDC encountered difficulties, NRDC Mot., Ex. G-1. And contrary to Federal Respondents' assertion, Fed. Resp'ts' Resp.11, Rule 25 of the Federal Rules of Appellate Procedure, which generally mandates service on the attorney of represented parties, has no bearing on section 2112(a)(1). If it did, it would render parts of section 2112(a)(1) and (a)(2) mere surplusage. To the extent Federal Respondents suggest (but do not show) that PDAAG Gustafson delivered AEA's petition to the Committee members on the same day he received it, that too would be insufficient. No party contests that service by the Clerk of Court, which would ordinarily suffice for service of process under Federal Rule of Appellate Procedure 15(c), is insufficient to satisfy section 2112(a)(1). *See Remington Lodging & Hosp., LLC v. NLRB*, 747 F.3d 903, 905 (D.C. Cir. 2014). The same goes for service by a DOJ attorney.

AEA goes a step further, arguing that Federal Respondents' designation of DOJ attorneys for defense counsel in litigation constituted a rule designating officers who could receive service on behalf of the Committee. AEA Resp. 18. Tellingly, Federal Respondents did not advance this argument, and with good reason. The Committee's selection of counsel *for these cases* is not a designation "by rule" about "who must receive petitions for review under [section 2112(a)(1),]" *see generally*, 28 U.S.C. § 2112(a)(2), and it lacks any indicia of rulemaking, such as notice and comment or even the recognition that a rule was promulgated, *see* 5 U.S.C. § 553. The litigation

14

designation does not at all resemble regulations where other agencies have designated a recipient for delivery of petitions under section 2112. *Cf.*, 17 C.F.R. § 201.490 (designating an office to receive petitions for the SEC); 29 C.F.R. § 2200.96 (same, for OSHA); 47 C.F.R. § 1.13(a) (same, for the FCC). The designation of unspecified attorneys at DOJ as counsel for specific litigation does nothing to satisfy section 2112(a)(2).

    **C. Respondents' Recent Discovery of AEA's Hand-Delivery Raises More Questions than It Answers**

Even if the Panel accepts Federal Respondents' novel statutory interpretation arguments, serious factual questions remain as to which members of the Committee received date-stamped petitions from AEA on April 13, 2026.

AEA and Federal Respondents have told four evolving accounts of how the AEA petition was delivered to Respondents. First, counsel for AEA signed a certificate of service attached to its petition stating, "[C]opies of this Petition for Review were served on the following Respondents and their counsel via U.S. first-class mail [*sic*] certified mail." Notice of Multicircuit Pets. for Review, Ex. 1 at 23. Counsel listed all six Respondents. *Id*. Second, on April 22, DOJ counsel provided Petitioner NRDC what DOJ deemed proof of service: AEA counsel's April 13 email to PDAAG Gustafson, enclosing AEA's date-stamped petition. NRDC Mot. Exs. G-2, G-3. Third, on April 29, DOJ emailed NRDC receipts for AEA's April 13 hand-delivery to four of six Federal Respondents. Ex. B-1. DOJ counsel specified that he had only learned of AEA's hand-delivery the week of April 27, 2026, after NRDC had filed its April 24 motion for reconsideration arguing, *inter alia*, the insufficiency of AEA counsel's email to PDAAG Gustafson. *Id.* Fourth, ⬛upon receipt of AEA's May 8 opposition to the motion, NRDC now learns that AEA apparently also hand-served PDAAG ⬛Gustafson⬛ and failed to hand-serve

the Department of the Army and the Council of Economic Advisors.⬚ AEA Resp. 17; Correia Decl. ¶¶ 8-9.

Federal Respondents have not specified which of these deliveries was the basis for their assertion, in the Notice of Multicircuit Petitions, that the AEA Petition was received by the Committee on April 13, 2026. The representation by DOJ counsel who signed the Notice of Multicircuit Petition that he had only learned of the hand-delivery receipts the week of April 27, 2026, Ex. B-1, suggests that Federal Respondents filed their Notice of Multicircuit Petitions without knowledge of those documents.

In addition to this temporal problem with Federal Respondents' reliance on the partial hand-delivery receipts, serious factual questions linger about whether the hand-delivery was authorized, and whether Federal Respondents treated both petitioners even-handedly. Federal Respondents produced a declaration from an Interior Department attorney-advisor attesting that she accepted hand-delivery of AEA's petition. *See* Fed. Resp'ts' Resp. Ex. 8, Att. 3 (Clark Decl.). Yet when an NRDC attorney called the Office of the Solicitor for the Department of the Interior to ask them to accept hand-delivery of the petition, the Interior representative stated that the Department did *not* accept hand delivery. Declaration of Katherine Desormeau (attached as Ex. C). Indeed, AEA's initial attempt to hand-deliver its Petition to the Department was rebuffed. Correia Decl. ¶ 11; Ex. B-2 ("Received: Officer Tayloe, They Do Not Accept Documents For T [*sic*], 04/13/2026 03:33:26 PM"). An attorney-advisor for the Department of the Interior then personally received the AEA Petition after being so instructed by an Executive Assistant to the Solicitor of the Interior. Clark Decl. ¶ 2.

The Office of the Solicitor of the Interior thus appears to have granted an exception from the no-hand-delivery rule conveyed to both NRDC and (initially) AEA. This exception helped

16

salvage AEA's bid to secure transfer to its preferred venue—the venue that Federal Respondents, too, clearly prefer. *See* NRDC Mot. Ex. B (Committee Order) at 3-4 (stating Committee's intent to defend litigation in Fifth or Eleventh circuits). But agencies are not entitled to apply different rules to different petitioners to manipulate the circuit lottery. *See Wynnewood Refin. Co., L.L.C. v. Occupational Safety & Health Rev. Comm'n*, 933 F.3d 499, 501 (5th Cir. 2019) (recognizing that 28 U.S.C. § 2112 deprived agencies of the power to choose their preferred venues); S. Rep. No. 100-263, at 2 (1987) (recognizing that until the 1958 amendments, agencies had the "unfair advantage" of selecting their preferred venue).

***

In sum, none of the contradictory theories on how service was effected under section 2112(a) are colorable readings of the statute. Given that Federal Respondents are plainly in breach of their statutory obligation to promulgate a rule clarifying how they are to receive petitions for the purposes of 28 U.S.C. § 2112(a)(1), *see id*., § 2112(a)(2), the Panel should not permit them to exploit the resulting ambiguity through contradictory, *post hoc* interpretations of the statute that suit their interests in remaining in the Fifth Circuit. This is exactly the sort of agency gamesmanship that section 2112 was enacted to prevent. *See* S. Rep. No. 100-263, at 2.

Despite Congress's mandate to do so, 28 U.S.C. § 2112(a)(2), the Committee itself has promulgated no regulation designating a single agent for service of process to qualify for the circuit lottery. The "confusion" here, AEA Resp. 1, Fed. Resp'ts' Resp. 7, is wholly of Federal Respondents' own making. Against this backdrop of governmental noncompliance, NRDC acted diligently, filed its petition for review right away, and served copies of its date-stamped petition (multiple times and in multiple ways) to and ensure they were "received" by all the committee members within 10 days of issuance. 28 U.S.C. 2112(a)(1). AEA could have done the same.

17

Instead, AEA waited until the last possible day (by its reckoning) to file its petition and then called in favors from DOJ to save it from the consequences of its delay. DOJ accepted service from AEA when it told NRDC it could not accept service from NRDC. To say NRDC is not "prejudiced" by these extreme irregularities, Fed. Resp'ts' Resp.12, is flat wrong. If the Consolidation Order stands, NRDC will have been deprived of its choice of forum, and sent to the forum that AEA and the Federal Respondents both so clearly prefer.

**III.    The Panel Has the Authority to Remedy Federal Respondents' Error**

Contrary to Respondents' contentions, the Panel has the authority to effectuate reconsideration orders and undo the consolidation of cases in the incorrect circuit court.

First, the Panel's determination that it lacked authority to direct the agency where to file the record in *Atlantic Coast Pipeline* was explicitly limited to "such circumstances" as existed in that case. *See In re FERC* (*Atlantic Coast Pipeline*), 341 F. Supp. 3d 1378, 1380 n.4 (J.P.M.L. 2018). Specifically, in *Atlantic Coast Pipeline*, the Panel's initial Consolidation Order was stayed the day after its entry and prior to the agency filing the record in the incorrect circuit court. *See* MCP No. 153, *Atlantic Coast Pipeline*, ECF Nos. 5, 6, 8. Here, on the other hand, the agency has already filed the record in the Fifth Circuit and initiated proceedings. Screenshot of Docket for *American Energy v. Burgum*, No. 26-60240 (5th Cir.) (attached as Exhibit D). The specific circumstances underpinning the Panel's restraint in *Atlantic Coast Pipeline* therefore do not exist here, and the Panel must order the record re-filed in the correct circuit court to prevent manifest injustice and effectuate section 2112's statutory mandates.

Nor do the Panel's conclusions in *Station GVR Acquisition* apply here. In that case, petitioners sought to halt the mandatory JPML random selection process. *In re NLRB* (*Station GVR Acquisition, LLC*), 338 F. Supp. 3d 1343, 1344-45 (J.P.M.L. 2018). NRDC seeks the

18

opposite remedy here: that the Panel effectuate its statutorily mandated procedures and ensure that the petitions for review are consolidated in the court in which the record is properly filed. *See* 28 U.S.C. § 2112(a)(3), (5).

The Panel has the authority to issue such orders. Section 2112 states, in no uncertain terms, that the agency "*shall* file the record" in the court of appeals designated by the Panel and that other courts "*shall* transfer" their proceedings "to the court in which the record is filed." *Id.* § 2112(a)(3), (5) (emphases added). Were the Panel unable to issue orders requiring them to do so, it could not carry out a fundamental statutory purpose. Moreover, the Panel plainly understands that it may issue faulty consolidation orders, which can then be cured upon motions to reconsider. *See* JPML Rule 25.7. It would be illogical for the Panel to reconsider potentially erroneous consolidation orders without the ability to cure them.

In the ordinary scenario, as a matter of comity, the Panel may hesitate to enumerate next steps following vacatur of its Consolidation Order. But this is no ordinary scenario. On April 23, 2026, after Defenders of Wildlife and National Wildlife Federation filed their motion for reconsideration, the Panel stayed its Consolidation Order pending its consideration of the motion; the stay was reflected on the Fifth Circuit docket. Ex. D at 6. Despite the stay, the Fifth Circuit case pressed forward unabated—on April 30, 2026, Federal Respondents prematurely filed the Certified Index to the Administrative Record, and on May 5, 2026, a Briefing Notice was issued, ordering, *inter alia*, that Petitioners file their opening brief by June 15, 2026. *Id.*; Briefing Notice (attached as Ex. E). On May 6, 2026, Environmental Petitioners jointly moved to stay further proceedings in the Fifth Circuit, including the deadlines in the Briefing Notice, while

the Panel considers their motions for reconsideration. As of the date of this filing, the motion remains pending.

Federal Respondents have made no secret of their desire to litigate this case in the Fifth or Eleventh Circuits. Indeed, as early as March 31, Federal Respondents (albeit improperly) identified their desired forum within the Committee Order itself, and their subsequent conduct has only reinforced that objective. NRDC Mot. Ex. B at 3-4. For example, Federal Respondents surely appreciated the intended effect of this Panel's stay of its Consolidated Order. Yet, disregarding this Panel's stay, they pressed ahead and filed their certified index in the Fifth Circuit, well in advance of any applicable deadline. And when NRDC requested their position on an abeyance motion in the Fifth Circuit pending this Panel's disposition of Environmental Petitioners' motions for reconsideration, Federal Respondents stated that they opposed.

Their conduct illustrates the importance of upholding the equity considerations underpinning section 2112. "Section 2112(a) creates a mechanical rule designed to prevent the agency from choosing the forum for review by filing the record as it pleased." *City of Gallup*, 702 F.2d at 1121 (citing *United Steelworkers of Am. v. Marshall*, 592 F.2d 693, 696 (3d Cir. 1979)). Where Federal Respondents have been overt in their efforts to forum shop, the Panel should enumerate the required next steps under Section 2112(a), both to effectuate the statute's purpose and ensure clarity moving forward on where these cases belong.

## CONCLUSION

For the foregoing reasons, the Committee's Multicircuit Notice should be struck, the Panel's Consolidation Order should be vacated, Federal Respondents should be ordered to file the record in the D.C. Circuit Court of Appeals, and the Fifth Circuit Court of Appeals should be instructed to transfer the consolidated petitions back to the D.C. Circuit.

20

Date: May 14, 2026

Respectfully submitted,

/s/ Sitara Witanachchi
Sitara Witanachchi (D.C. Bar No. 1023007)
Erik Van de Stouwe (NY Bar No. 5692512)
Jared Solomon (D.C. Bar No. 90033165)
Natural Resources Defense Council, Inc.
1152 15th St. NW, Suite 300
Washington, D.C. 20005
switanachchi@nrdc.org
evandestouwe@nrdc.org
jsolomon@nrdc.org
Tel: (202) 289-6868

Katherine Desormeau (CA Bar No. 266463)
Natural Resources Defense Council, Inc.
111 Sutter St., 21st Floor
San Francisco, CA 94104
kdesormeau@nrdc.org
Tel: (415) 875-6100

*Attorneys for Petitioner Natural Resources
Defense Council, Inc.*

**CERTIFICATE OF SERVICE**

In accordance with JPML 4.1, the undersigned certify that, on May 14, 2026, this

Combined Reply in Support of Motion for Reconsideration and attachments were served via

CM/ECF on all parties who are registered users.

The undersigned further certify that they served a copy of the foregoing on counsel for all

parties in the Fifth and D.C. Circuit proceedings as follows:

Robert N. Stander
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530
(202) 727-7067
robert.stander@usdoj.gov

Christopher Anderson
Environment and Natural Resources Div.
U.S. Department of Justice
Post Office Box 7415
Washington, DC 20044
(202) 598-1971
christopher.anderson3@usdoj.gov

James R. Conde
Boyden Gray PLLC
800 Connecticut Avenue, 900
Washington, DC 20006
(202) 955-0620
jconde@boydengray.com

Jane P. Davenport
Joseph M. Manning
Victoria Molyneaux*
Defenders of Wildlife
1130 17th St. NW
Washington, DC 20036
(202) 682-9400
jdavenport@defenders.org
jmanning@defenders.org
*of counsel

Catherine Wannamaker

Southern Environmental Law Center
525 East Bay Street, Suite 200
Charleston, South Carolina 29403
(843) 720-5270
cwannamaker@selc.org

Zachary J. Hennessee
Southern Environmental Law Center
Ten Tenth Street, Suite 1050
Atlanta, Georgia 30309
(678) 400-4817
zhennessee@selc.org

Tiffany Wang
Stoel Rives LLP
600 University Street, Suite 3600
Seattle, Washington 98101
(206) 624-0900
Tiffany.wang@stoel.com

Jason T. Morgan
Stoel Rives LLP
600 University Street, Suite 3600
Seattle, Washington 98101
(206) 624-0900
Jason.morgan@stoel.com


The undersigned further certify that they served a copy of the foregoing proceedings on

counsel for the Eleventh Circuit Petitioner via USPS First Class mail and email:

Prim Formby Escalona
Maynard Nexsen PC
1901 6th Ave N, Suite 1700
Birmingham, AL 35203
pescalona@maynardnexsen.com