**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| **In re:** Endangered Species Committee, Order Regarding Gulf of America Oil and Gas Activities, 91 Fed. Reg. 16966, Issued on April 3, 2026 | MCP No. 202 |

**CONSERVATION GROUPS' COMBINED REPLY IN SUPPORT OF THEIR MOTION
TO RECONSIDER CONSOLIDATION ORDER, STRIKE NOTICE OF MULTICIRCUIT
PETITIONS FOR REVIEW, AND VACATE CONSOLIDATION ORDER**

Defenders of Wildlife and the National Wildlife Federation, National Parks Conservation Association, Florida Wildlife Federation, Louisiana Wildlife Federation, and Texas Conservation Alliance (collectively, Conservation Groups) respectfully submit the following reply in support of their motion for reconsideration (ECF No. 7) of the Panel's Consolidation Order dated April 17, 2026, consolidating judicial review in the Fifth Circuit. *See* JPML Rule 25.7(a). Because Conservation Groups' petitions are subject to the Consolidation Order, they have properly moved for reconsideration. ECF No. 7 at 4–5.

**ARGUMENT**

Respondents and the American Energy Association (AEA) offer no arguments that change the controlling fact here: AEA's untimely Petition fails the strict statutory requirements for triggering the multi-circuit lottery under 28 U.S.C. § 2112(a)(1). ECF No. 7 at 5–10. AEA filed its petition in the Fifth Circuit on April 13, 2026—thirteen days after the Endangered Species Committee (Committee) met on March 31, 2026, when it voted to grant a sweeping exemption under the Endangered Species Act (ESA) and issued its written decision and order (Committee Order), effective immediately. AEA's filing was too late. Because it filed three days

1

after the close of the ten-day period specified by 28 U.S.C. § 2112(a)(1), the Panel should strike Respondents' Multicircuit Notice and vacate the Consolidation Order.

**I.    CONSERVATION GROUPS ARE SUBJECT TO THE JPML'S CONSOLIDATION ORDER AND PROPERLY SEEK RECONSIDERATION**

Respondents assert that the Conservation Groups "lack standing to seek reconsideration of the consolidation order" based on the general principle that consolidation "does not merge the suits into a single cause." ECF No. 25 at 4. But they ignore what really matters—the explicit JPML rules and the statutory text governing multi-circuit petitions practice. *See* JPML Rule 25.7(a); 28 U.S.C. § 2112(a).

Under the Panel's rules, any "party to a petition for review subject to a consolidation order" may seek reconsideration of that order within seven days of its issuance. JPML Rule 25.7(a). The rules do not define "subject to," a phrase commonly understood to mean "affected by." *Subject To*, MERRIAM-WEBSTER DICTIONARY, merriam-webster.com/dictionary/subject%20to (last visited May 14, 2026). Black's Law Dictionary defines "subject" to mean "exposed to (some contingency)." *Subject*, BLACK'S LAW DICTIONARY (12th ed. 2024). Conservation Groups do not assert that their petitions and NRDC's are a single cause. Nevertheless, they are "subject to" the Panel's Consolidation Order as contemplated by JPML Rule 25.7(a), because, pursuant to the Consolidation Order, the D.C. Circuit transferred their petitions from their chosen forum to the Fifth Circuit. ECF No. 7 at 4–5.

Respondents irrelevantly argue that the Consolidation Order did not *require* the D.C. Circuit to transfer Conservation Groups' petitions to the Fifth Circuit. Rather, they contend, the D.C. Circuit transferred those petitions "on its own authority." ECF No. 25 at 4. This is of no moment. The outcome is the same—Conservation Groups' petitions have been transferred out of the D.C. Circuit and consolidated in the Fifth. The D.C. Circuit clearly understood the

Consolidation Order to control venue when it ordered transfer to the Fifth Circuit.[1] ECF No. 7-4. Conservation Groups have undeniably been "affected by" the Consolidation Order and are "subject to" it. Their motion for reconsideration is properly before the Panel.

**II.    THE COMMITTEE ORDER ISSUED ON MARCH 31, 2026, WHEN IT BECAME FINAL, REVIEWABLE AGENCY ACTION**

ESA section 7(n) renders judicial review available upon the issuance of a Committee exemption decision under ESA section 7(h)(1). 16 U.S.C. § 1536(n). This "issuance of the decision" starts the ten-day section 2112(a)(1) clock. *Id.*; *see also* 28 U.S.C. § 2112(a)(1) (looking to the "issuance of the order"). Here, it started on March 31, 2026.

Respondents and AEA advance three contentions, each lacking merit. First, they assert that issuance is synonymous with Federal Register publication. ECF No. 24 at 11–20; ECF No. 25 at 5. Second, they argue that the ESA regulations define issuance as Federal Register publication. ECF No. 24 at 20–21; ECF No. 25 at 5–7. Third, they claim that their interpretation is necessary to avoid confusion. ECF No. 24 at 17–18; ECF No. 25 at 7–8.

The plain meaning of "issuance" and case law interpreting it (including cases decided under section 2112(a)) show that, absent some agency regulation defining the term, an agency order is deemed "issued" when it is judicially reviewable and made publicly known. ECF No. 7 at 6–9. The ESA itself states that a Committee determination is final agency action for purposes of judicial review under the Administrative Procedure Act (APA). *Id.* at 6 (citing 16 U.S.C. § 1536(h)(1)). The relevant ESA regulation explicitly treats issuance and Federal Register publication separately, with issuance preceding publication. *Id.* at 9–10 (citing 50 C.F.R. §

---

[1] More, the Panel's Consolidation Order requires the record to be filed in the Fifth Circuit, and the statute requires all cases challenging the same order to be transferred to the Fifth as well. 28 U.S.C. § 2112(a)(5). The Consolidation Order thus governs where all petitions for review of the Committee Order must proceed, unless vacated pursuant to the motions for reconsideration.

453.03(b)). The Committee meeting was not only livestreamed on March 31, but the written exemption order was published on Interior's website the same day. And the government's contemporaneous litigation filings treating the Committee Order as immediately mooting three ongoing ESA cases as of March 31, 2026, demonstrate that it issued on that date, not when it published in the Federal Register three days later. *Id*. at 10; ECF No. 7-3 at 3, 6, 9.

### A. Issuance is not synonymous with Federal Register publication absent clear statutory or regulatory direction that is not present here.

In arguing that AEA's petition was timely for purposes of the multicircuit lottery, Respondents and AEA conflate "issuance" with "publication," claiming that an order is "issued" for purposes of section 2112(a)(1) only when it is published in the Federal Register (or, possibly, filed for public inspection at the Office of the Federal Register). In making this unfounded leap of logic, they stress that "to issue" means "to promulgate," citing a handful of cases where courts found, under different statutes, that promulgation means Federal Register publication. ECF No. 24 at 13–15; ECF No. 25 at 5.

Respondents and AEA cannot rely on cases (most of which did not involve section 2112(a)) arising under inapposite statutes to establish that the Committee Order "issued" only when published in the Federal Register. Indeed, read together, these cases illustrate that when an agency order has "issued" is highly dependent on statutory and regulatory context.

Although AEA holds out *Horsehead Resource Development Company, Inc. v. EPA* for the proposition that orders are not issued until Federal Register publication, that case turned on when Resource Conservation and Recovery Act delisting petitions become final. 130 F.3d 1090, 1095 (D.C. Cir. 1997). The D.C. Circuit held that "the plain import of [EPA's regulations] is that until Federal Register publication has occurred, the Administrator has not made a final decision on a de-listing petition." *Id*. at 1095 (cleaned up). Because only final agency actions are

reviewable under the APA, the court lacked jurisdiction over a petition for review filed twelve days before publication. *Id*.

Similarly, in *Council Tree Communications, Inc. v. FCC*, cited by Respondents, the Third Circuit assessed when a filing window began to run under the Hobbs Act, which allows aggrieved parties to file petitions for review of an FCC order upon the "entry of a final order." 503 F.3d 284, 287 (3d Cir. 2007) (quoting 28 U.S.C. § 2344). FCC regulations readily answered the question: an order becomes "final" for judicial review purposes on the date of public notice, where "public notice" is explicitly defined as "publication in the Federal Register." *Id.* at 288 (citing 47 C.F.R. §§ 1.4(b)(1), 1.103(b)). The order's finality and Federal Register publication were defined by regulation as the same event, rendering judicial review premature because the order had not yet been published when the petition was filed. *Id.* at 288–89.

When examined carefully, the case law Respondents and AEA cite involved regulatory schemes that define finality as occurring upon Federal Register publication. These are consistent with Conservation Groups' position that, absent some agency regulation defining the term, an agency order is deemed "issued" when it is final, judicially reviewable, and made publicly known. ECF No. 7 at 6–9. Here, by contrast, the regulation implementing the ESA section 7 Committee process expressly describes the issuance of a final Committee Order and its publication in the Federal Register as two distinct events. *See id.* at 9–10 (discussing 50 C.F.R. § 453.03).

Courts have long rejected attempts to conflate "issuance" with "promulgation" or "publication" when neither statute nor regulation renders those terms synonymous. In *National Grain and Feed Association, Inc. v. OSHA*, the D.C. Circuit rejected an agency's attempts to conflate promulgation with issuance because the statute at issue—which provided that "any

5

person who may be adversely affected by a standard issued under this section may at any time prior to the sixtieth day after such standard is promulgated file a petition"—clearly indicated that "Congress intended to treat the date of issuance differently from the date of promulgation." 845 F.2d 345, 345–46 (D.C. Cir. 1988) (quoting 29 U.S.C. § 655(f) (cleaned up)). Even *Horsehead Resource Development* acknowledged that equating "issuance" with "promulgation" is inappropriate without clear statutory or regulatory support. 130 F.3d at 1095 n.6 (favorably citing *National Grain*'s holding "rejecting agency interpretation of 'promulgation' as synonymous with regulatory definition of 'issuance' because '[i]t is clear from a reading of 29 U.S.C. § 655(f) that Congress intended' 'issuance' and 'promulgation' to be defined differently" (quoting 845 F.2d at 346)).

**B. Cases interpreting "issuance" under section 2112(a) find the term to be broader than Federal Register publication.**

Cases that have directly addressed the meaning of "issuance" under section 2112(a) have interpreted the term more broadly than mere Federal Register publication. *See, e.g.*, *In re Fed. Energy Regul. Comm'n*, 730 F. Supp. 3d 1366, 1369 (J.P.M.L. 2024) [*Gas Transmission Nw.*]; *In re Elec. Sec. Ass'n*, No. 24-60570, slip op. at 6 & n.4 (5th Cir. Nov. 19, 2024); *Associated Gas Distribs. v. FERC*, 738 F.2d 1388, 1391–92 (D.C. Cir. 1984). In *Gas Transmission Northwest*, this Panel held that agency orders issue for the purpose of section 2112(a)(1)'s ten-day countdown once they are final and ripe for judicial review, even if an agency's announcement of the triggering act comes later. 730 F. Supp. 3d at 1369. In *In re Electronic Security Association*, the Fifth Circuit held that "[i]ssuance is 'the action of supplying or distributing something, especially for official purposes' or 'the action of formally making something known'" and does not require publication in the Federal Register. No. 24-60570, slip op. at 6 & n.4. In *Associated Gas Distributors*, the D.C. Circuit deferred to FERC's regulation that an order is "deemed

issued" for purposes of an earlier version of section 2112(a) when "the Secretary does the earliest of the following: (i) Posts a full-text copy in the Division of Public Information; (ii) Mails or delivers copies of the order to the parties; or (iii) Makes such copies public." 738 F.2d at 1391 & n.2 (quoting 18 C.F.R. § 385.2007(b) (1982)).

Here, the Committee Order became final and ripe for judicial review on March 31, 2026. *See* 16 U.S.C. § 1536(h)(1) ("Any final determination by the Committee under this subsection shall be considered final agency action for purposes of chapter 7 of title 5."); *see also Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (defining indicia of finality for APA review purposes). An agency action is final if two independent conditions are met: (1) it "mark[s] the consummation of the agency's decisionmaking process" and is not "of a merely tentative or interlocutory nature"; and (2) it is an action "by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett*, 520 U.S. at 177–78 (quotation marks omitted). The Committee Order has these indicia of finality. It marked the consummation of the Committee's decisionmaking process, *id*. at 178. The signed final order was published on Interior's website on March 31, 2026, stating, "This decision and order are effective immediately. [Dated] March 31, 2026." ECF No. 7 at 6; ECF No. 7-1; ECF No. 7-3 at 3, 6, 9 (footnotes). It is an action by which rights or obligations have been determined, *Bennett*, 520 U.S. at 178, because it exempted two Interior agencies that authorize oil and gas activities on the Outer Continental Shelf of the Gulf of Mexico from complying with their ESA section 7(a)(2) obligations to ensure that their authorizations are not likely to jeopardize the continued existence of an endangered or threatened species or to destroy or adversely modify critical habitat. ECF No. 7-1. And it is an action from which legal consequences will flow, *Bennett*, 520 U.S. at 178, as the government demonstrated by rushing the very same day to notify district judges that the Order was "effective immediately"

and mooted three pending ESA cases. ECF No. 7-3 at 3, 6, 9. The Committee's action was made publicly known the same day. *See* ECF No. 7 at 7–9. Thus, case law on section 2112(a), the plain language of ESA section 7(h)(1), and the *Bennett v. Spear* test support that the Committee issued its decision on March 31, 2026.

Respondents and AEA unpersuasively try to distinguish *Gas Transmission Northwest* by arguing that the petitions there sought review of an order that had been published well before the rehearing period expired. ECF No. 24 at 18–19; ECF No. 25 at 9. Yet the Panel decision in *Gas Transmission Northwest* never discussed publication. And the "publication" Respondents and AEA reference was FERC's publication of a Natural Gas Act certificate of convenience and public necessity on its own docket, not in the Federal Register. *Gas Transmission Nw.*, 730 F. Supp. 3d at 1367. "To appeal an order under the Natural Gas Act, a party must first seek rehearing from the agency." *Id*. Thus, as AEA acknowledges, "the expiration of the 30-day time for rehearing was when the order issued under section 2112 because it is when the appeal of the initial order finally ripened under the Natural Gas Act's review scheme." ECF No. 24 at 19 (citing *Gas Transmission Nw.*, 730 F. Supp. 3d at 1369). So, too, here: the Committee Order issued on March 31, 2026, when it became final, ripe for judicial review, and publicly known— not when it was subsequently published in the Federal Register.

**C. ESA regulations treat a Committee Order's issuance and its publication in the Federal Register as distinct events.**

Respondents assert that 50 C.F.R. § 453.03(b) establishes that the Committee Order issues only upon Federal Register publication because, "[h]ad the Committee intended for publication in the Federal Register to be merely advisory and without legal effect, there would have been no need to include a requirement that the decision be published 'as soon as

practicable.'" ECF 25 at 6. This misreads the plain language of the regulation and misstates the import of the phrase "as soon as practicable."

Under statutory schemes not germane here, courts have upheld an agency's specification by regulation of a decision's date of issuance. *See* ECF No. 25 at 5–6. But Respondents ignore that 50 C.F.R. § 453.03(b) does not tie the "date of issuance" of a Committee exemption decision to Federal Register publication for the purposes of starting the 90-day judicial review clock under ESA section 7(n) or the ten-day multi-circuit lottery clock under section 2112(a)(1). Instead, it treats issuance and Federal Register publication as separate events. It states that (1) "the Committee shall *issue an order* granting the exemption" and separately that (2) "[t]he Committee shall *publish its decision and order* in the Federal Register as soon as practicable." 50 C.F.R. § 453.03(b) (emphasis added).

"As soon as practicable" is commonly understood to mean within a "reasonable time," but is "not synonymous with 'as soon as possible.'" *See Allied Painting & Decorating, Inc. v. Int'l Painters & Allied Trades Indus. Pension Fund*, 107 F.4th 190, 197 n.16 (3d Cir. 2024) (quoting *As Soon As Practicable*, Black's Law Dictionary (5th ed. 1979)). The phrase most reasonably ensures that orders of national importance are promptly recorded in the Federal Register. Here, absent express regulatory language specifying that an exemption order will be deemed to have issued upon Federal Register publication, the phrase simply cannot bear the significance Respondents wish.

In promulgating regulations implementing the Committee procedures, the Secretaries of Interior and Commerce could have chosen to tie the date of issuance of a Committee order to the date of its Federal Register publication. They did not do so. Their choice to specify the issuance of an exemption order as preceding and as separate from Federal Register publication, 50 C.F.R.

§ 453.03(b)—a regulation promulgated contemporaneously with the ESA amendments establishing the Committee process and maintained consistently—should inform the Panel's interpretation of ESA section 7(n)'s phrase "issuance of the decision." *See* ECF No. 7 at 9–10.

> **D. Finding the Committee Order issued when final and public poses no policy concerns, whereas finding the Committee Order did not issue until published in the Federal Register invites abuse.**

Opponents advance various policy reasons why finding "issuance" to mean Federal Register publication is necessary to avoid confusion and chaos. ECF No. 24 at 17–18; ECF No. 25 at 7–8. These are neither persuasive nor determinative.

First, these results-oriented arguments are irrelevant because they clearly conflict with the ESA's statutory and regulatory text. ESA section 7(n) renders judicial review available upon the issuance of a Committee decision under ESA section 7(h). 16 U.S.C. § 1536(n). ESA section 7(h)(1) specifies that, for APA judicial review purposes, any final determination by the Committee is final agency action. *Id.* § 1536(h)(1). The regulation clearly distinguishes the issuance of an order granting an exemption from its subsequent publication in the Federal Register. 50 C.F.R. § 453.03(b).

Maintaining the distinction between issuance and Federal Register publication with respect to the Committee Order will not "lead to confusion and spawn needless court filings," as Respondents and AEA suggest. ECF No. 24 at 7; *see also* ECF No. 25 at 7–8. The Committee Order was formally issued and made readily available to the public on March 31, 2026. The Committee (1) announced weeks in advance that it would hold a livestreamed meeting on March 31, 2026; (2) on March 31, 2026, provided a live and recorded video of that meeting on YouTube in which Secretary Burgum stated that a written order would be published on Interior's website that day; and (3) that same day, published the entirety of the Order on Interior's official website and submitted it as an exhibit in multiple district court cases. ECF No. 7 at 8. Should agencies

share future orders on hard-to-find or informal platforms, *see* ECF No. 24 at 11–12, the courts may engage with those line-drawing questions as they arise to ensure that government officials do not inappropriately skirt judicial review. But given that this Committee Order was easily accessible on March 31, 2026, there is no need to set foot on the slippery slope. The prior rule employed by the Fifth Circuit remains "clear and easy" to apply: if a final order is published on an official government website after a public announcement, it has been issued for the purposes of section 2112(a). *Hamer v. Neighborhood Hous. Servs. of Chi.*, 583 U.S. 17, 25 (2017); *see also In re Elec. Sec. Ass'n*, No. 24-60570, slip op. at 6 & n.4.

Adopting Respondents' and AEA's preferred interpretation, on the other hand, would invite abuse. By its plain terms, the March 31, 2026, Committee Order granted an ESA exemption that took effect "immediately." ECF No. 7-1 at 4. That day, two Interior agencies were immediately relieved of their ESA section 7(a)(2) obligations to ensure that their authorizations of oil and gas activities on the Outer Continental Shelf of the Gulf of Mexico are not likely to jeopardize endangered and threatened species or destroy critical habitat. That day, the federal government filed notices in three ESA cases pending in district court asserting that the Committee Order had mooted the lawsuits. ECF No. 7 at 8, 10; ECF No. 7-3 at 3, 6, 9. If Committee exemptions are effective both on the ground and in the courts before they are judicially reviewable, the Committee could grant sweeping exemptions, make them effective immediately, and then delay judicial review by withholding Federal Register publication. This Panel should reject Respondents' and AEA's invitation to such gamesmanship.

Respondents do not dispute that the Committee Order was final and effective on March 31, 2026. Instead, they point to dicta in *Western Union Telegraph Co. v. FCC* for the idea that "[i]t is not a principle of law that all agency action must be reviewable as soon as it is effective

and ripe —or indeed that all agency action need be reviewable at all. " 773 F.2d 375, 377 (D.C. Cir. 1985) (Scalia, J.); ECF No. 25 at 9. But that is irrelevant here. Congress explicitly made Committee orders final agency actions subject to judicial review. 16 U.S.C. §§ 1536(h)(1), (n).

Respondents identify no case law allowing a federal agency to insulate itself from judicial review by delaying issuance of an effective order. On the contrary, courts have consistently rejected such efforts to manipulate jurisdiction. *See Va. Elec. & Power Co. v. EPA*, 610 F.2d 187, 189 (4th Cir. 1979) (rejecting the implication that "an agency may postpone for any period of time past the time of substantive effectiveness of regulations their exposure to judicial review"); *cf. Fla. Manufactured Hous. Ass'n, Inc. v. Cisneros*, 53 F.3d 1565, 1574 (11th Cir. 1995) (rejecting an interpretation of "issued" that would have granted an agency "the power to manipulate the jurisdiction of the federal courts").

AEA's effort to insulate the Committee Order from immediate judicial review fares no better. It asserts that "because Committee orders generally relieve regulated parties of obligations under the Endangered Species Act . . . it's unconcerning if the exemption starts before the public learns about it," ECF No. 24 at 22 (citing 5 U.S.C. § 553(d)(1)). 5 U.S.C. § 553 governs generally applicable rulemakings. 5 U.S.C. § 553(d)(1) mandates at least 30 days elapse between the required publication or service of a substantive rule, unless it grants or recognizes an exemption or relieves a restriction. But the Committee process is not a § 553 rulemaking and a Committee exemption order is not a substantive rule. It is an exemption from the statutory requirement that specific agency actions in specific locations must comply with ESA section 7(a)(2). 16 U.S.C. § 1536(g)–(h). Moreover, while 5 U.S.C. § 553(d)(1) allows an agency to shorten the period between publication and effectiveness of a regulation, it does not permit the agency to insulate itself from judicial review of an effective order by delaying its publication.

12

**CONCLUSION**

For the reasons stated here and in their opening brief, Conservation Groups request that

the Panel strike Respondents' Multicircuit Notice and vacate the Consolidation Order.

Dated: May 14, 2026

Respectfully submitted,

/s/ *Jane P. Davenport*
Jane P. Davenport
Joseph M. Manning
Victoria Molyneaux
Defenders of Wildlife
1130 17th St. NW
Washington, DC 20036
(202) 682-9400
jdavenport@defenders.org
jmanning@defenders.org
vmolyneaux@defenders.org

*Attorneys for Petitioner Defenders of Wildlife*

/s/ *Catherine Wannamaker*
Catherine Wannamaker
Southern Environmental Law Center
525 East Bay Street, Suite 200
Charleston, South Carolina 29403
(843) 720-5270
cwannamaker@selc.org

Zachary J. Hennessee
Southern Environmental Law Center
Ten Tenth Street, Suite 1050
Atlanta, Georgia 30309
(678) 400-4817
zhennessee@selc.org

*Attorneys for Petitioners National Wildlife
Federation, National Parks Conservation
Association, Florida Wildlife Federation,
Louisiana Wildlife Federation, and Texas
Conservation Alliance*

13

**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| **In re:** Endangered Species Committee, Order Regarding Gulf of America Oil and Gas Activities, 91 Fed. Reg. 16966, Issued on April 3, 2026 | MCP No. 202 |

**PROOF OF SERVICE**

In compliance with Rule 4.1 of the Rules of Procedure for the United States Judicial Panel on Multidistrict Litigation, the undersigned certifies that that on May 14, 2026, I electronically filed the Combined Reply in Support of Motion for Reconsideration with the Clerk of the Panel using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ *Jane P. Davenport*
Jane P. Davenport

14